IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 11-mc-00064-GCM

|  |  |  |
|---|---|---|
| TW TELECOM HOLDINGS INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) | RESPONSE IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO SHOW CAUSE AND MOTION FOR CIVIL CONTEMPT |
| Plaintiff, | | |
| v. | | |
| CAROLINA INTERNET, LTD., | | |
| Defendant. | | |

NOW COME Data Conversions, Inc.[1] ("Data Conversions"), Raymond "Scott" Coffman ("Coffman") and Hyperpoint, LLC ("Hyperpoint") (collectively, "Respondents"), by and through their undersigned counsel, pursuant to Local Rule 7.1, and respectfully submit this Response in Opposition ("Response") to Plaintiff's Emergency Motion For Data Conversion, Ltd., Raymond "Scott" Coffman and Hypershop, LLC To Show Cause And Motion For Civil Contempt Against Data Conversions, Ltd, Raymond "Scott" Coffman and Hyperpoint, LLC (the "Motion") and brief in support ("Brief").

## INTRODUCTION

Plaintiff TW Telecom Holdings, Inc. ("Plaintiff") domesticated a default judgment against Defendant Carolina Internet, Ltd. ("Defendant") from a federal court in Colorado. At Plaintiff's request, the Clerk of this Court issued a Writ of Execution against Defendant's assets located in Mecklenburg County, Plaintiff unsuccessfully attempted to use the United States Marshal to execute on assets owned by Data Conversions that were allegedly owed to Defendant.

---

[1] Respondent Data Conversions, Inc. is incorrectly named in the Motion and Brief as "Data Conversions, Ltd." The correct name of the corporation is Data Conversions, Inc..

1

Plaintiff became frustrated by Data Conversions's reluctance to pay money directly to the U.S. Marshal and filed the the Motion and Brief at issue here.

Plaintiff never obtained a Writ of Execution or Order from the Court directed to the Respondents, or to any of them. Instead, Plaintiff obtained a Writ of Execution directed solely against Carolina Internet, Ltd. and then Plaintiff's counsel unlawfully directed the United States Marshal to execute against Respondent's funds without following the process by which such executions are conducted under applicable North Carolina statutes – a process well-known to Plaintiff's Texas counsel as he has described that process in filings to this Court. When Plaintiff's attempt to have the Marshal conduct an illegal seizure of Respondent's funds failed, Plaintiff's counsel filed the Motion – again in disregard of the governing North Carolina statutes.

## STATEMENT OF FACTS

1. On January 17, 2011, Plaintiff obtained a default judgment against Defendant Carolina Internet, Ltd. from the U.S. District Court in Denver, Colorado in Case Number 1:10-cv-01799. Plaintiff asserted that it filed the default judgment in this Court at Docket No. 1-1 but it did not. Instead, it filed two copies of the same Minute Order at Docket Nos. 1-1 and 1-3. A copy can be found at Docket No. 7-4.

2. On March 21, 2011, the Colorado court granted several motions by Plaintiff, including a Motion for Authorization to Register Judgment In Another District. See Dkt Nos. 1-1 and 1-3. On March 25, 2011, the Clerk of the Colorado court issued a Certification of Judgment for Registration in Another District. Dkt No. 1-2.

3. On June 30, 2011, Plaintiff moved this Court for three Writs of Execution – one each for Cabarrus, Mecklenburg, and Wake counties. Dkt. Nos. 7, 7-1, 7-2, and 7-3. The Clerk of

Court issued a Writ of Execution against Carolina Internet, Ltd. for Mecklenburg County on July 5, 2011. Dkt. No. 8. The Writ of Execution makes no mention of any of the Respondents.

4. To obtain the assistance of the U.S. Marshals Service in serving process, one may use a Form USM-285 to provide needed information to the U.S. Marshals. Attached hereto as Exhibit 1 is a page downloaded and printed from the website of the U.S. Marshals Service. It indicates that a "writ of execution is a process issued by the court directing the U.S. Marshal to enforce and satisfy a judgment for payment of money" and that it "is served according to the instructions within the writ and pursuant to state law, which generally governs procedures for levy." Exhibit 1. There has been no writ of execution issued by the Court against any of the Respondents and there are no instructions on the Writ of Execution regarding any of the Respondents.

5. On or about August 22, 2011, Plaintiff's counsel signed and delivered to the Clerk of Court a Form USM-285 purporting to direct the U.S. Marshals to:

> Please serve the attached Writ of Execution and Default Judgment at the address listed above on Wednesday, August 31, 2011. Execute upon all amounts (including but not limited to accounts payable, trade accounts, cash and cash equivalents) held by A.E.B.N. which are due and owing or which are to become due and owing to Carolina Internet, Ltd., as would be necessary to satisfy tw telecom's Default Judgment, attached hereto, in whole or in part.

(Dkt. No. 11-2). The Clerk signed the Form USM-285 as proferred by Plaintiff on August 23, 2011. Id. The Form USM-285 lists "Data Conversions, Inc. d/b/a A.E.B.N." as the company to be served. Id.

6. On or about August 31, 2011, Plaintiff's counsel had a letter hand-delivered to the U.S. Marshals Service in Charlotte providing "some background information concerning the enclosed writ of execution and the party you will be serving today" that being Data Conversions (which was also known as "AEBN"). Plaintiff's counsel informed the U.S. Marshal that it was

3
NPGBO1:1451679.1
Case 3:11-mc-00064-GCM   Document 24   Filed 10/07/11   Page 3 of 16

Plaintiff's "intent to execute on this amount due and owing to Carolina Internet [an anticipated wire transfer from Data Conversions to Plaintiff] before it is wired to Carolina Internet's bank." Plaintiff's counsel then directed the U.S. Marshal to:

> . . . execute upon all amounts (including but not limited to accounts payable, trade accounts, cash and cash equivalents) held by A.E.B.N. which are due and owing to Carolina Internet. . .

7. North Carolina General Statutes, Section 1-324.4 is entitled "Debts due corporation subject to execution; duty, etc., of agent," and provides:

> If an officer holding an execution is unable to find other property belonging to the corporation liable to execution, he or the judgment creditor may elect to satisfy such execution in whole or in part out of any debts due the corporation, and it is the duty of any agent or person having custody of any evidence of such debt to deliver it to the officer, for the use of the creditor and such delivery, with a transfer to the officer in writing, for the use of the creditor and notice to the debtor, shall be a valid assignment thereof, and the creditor may sue for and collect the same in the name of the corporation, subject to such equitable set-offs on the part of the debtor as in other assignments. Every agent or person who neglects or refuses to comply with the provisions of this section and G.S. 1-324.2 is liable to pay to the execution creditor the amount due on the execution, with costs

8. North Carolina General Statutes, Section 1-360 is entitled "Debtors of judgment debtor may be summoned" and states:

> Upon the issuing or return of an execution against property of the judgment debtor, or of any one of several debtors in the same judgment, and upon affidavit that any person or corporation has property of said judgment debtor, or is indebted to him in an amount exceeding ten dollars ($10.00), the court of judge may, by order, require such person or corporation, or any officer or members thereof, to appear at a specified time and place, and answer concerning the same provided, however, that such inquiries may, in the discretion of the court, be answered by such person or corporation, or any officers or members thereof, by verified answers to interrogatories. The court of judge may also, in its or his discretion, require notice of the proceeding to be given to any party to the action, in such manner as seems proper.

9. North Carolina General Statutes, Section 1-360.1 is entitled "Execution on the property of debtors of judgment debtor" and states:

> After the clerk of superior court determines to the clerk's satisfaction that the debtor of the judgment debtor acknowledged at a proceeding conducted pursuant to G.S. 1-360 that he is in possession of unencumbered property of such judgment debtor or is indebted to him in an amount exceeding ten dollars ($10.00), an execution shall issue against the property or debt of the judgment debtor that the debtor of the judgment debtor acknowledged he holds.

10. North Carolina General Statutes, Section 1-362 is entitled "Debtor's property ordered sold" and states:

> The court or judge may order any property, whether subject or not to be sold under execution (except the homestead and personal property exemptions of the judgment debtor), in the hands of the judgment debtor or of any other person, or due to the judgment debtor, to be applied towards the satisfaction of the judgment; except that the earnings of the debtor for his personal services, at any time within 60 days next preceding the order, cannot be so applied when it appears, by the debtor's affidavit or otherwise, that these earnings are necessary for the use of a family supported wholly or partly by his labor. (C.C.P., s. 269; 1870-1, c. 245, Code, s. 493; Rev., s. 678; C.S., s. 721.)

11. Plaintiff has not undertaken any supplemental proceedings provided for by the statutes set forth above, has not obtained a writ of execution against any property of any of the Respondents, nor taken any other step to properly bring the non-party Respondents before the Court to answer concerning any debts they may owe to the Defendant.

12. On or about August 29, 2011 and September 2, 2011, the U.S. Marshal's Service attempted to collect money from Data Conversions. Data Conversions has not provided any money to the U.S. Marshal's Service.

13. On September 23, 2011, Plaintiff filed the pending Motion and Brief accusing Respondents of preventing the U.S. Marshals Service from executing on the Writ of Execution. See p. 1 of Docket No. 21.

14. On September 28, 2011, Defendant filed a Voluntary Petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the

5
NPGBO1:1451679.1
Case 3:11-mc-00064-GCM   Document 24   Filed 10/07/11   Page 5 of 16

Western District of North Carolina ("Bankruptcy Court"), which case is styled <u>In re: Carolina Internet, Ltd.</u>, Bankr. Case No. 11-32461 (the "Bankruptcy Case").

## ISSUES

1. Can the Respondents be held in civil contempt of a Writ of Execution issued against the Defendant when the Writ does not name any of the Respondents and does not require the Respondents to do anything?

2. Can the Respondents be held in civil contempt when the Plaintiff has not followed the proper procedures to obtain a Writ of Execution or other Order of the Court that would properly bring non-party Respondents before the Court to address debts that they may owe to Defendant or would allow seizure of any property from any of the Respondents or would require any of the Respondents to pay money to the U.S. Marshals Service or to the Plainitiff?

## ARGUMENT

**I. RESPONDENTS CANNOT BE IN CONTEMPT OF COURT BECAUSE THERE ARE NO COURT ORDERS DIRECTED TOWARDS RESPONDENTS AND THE WRIT OF EXECUTION DOES NOT IMPOSE ANY AFFIRMATIVE DUTIES AGAINST RESPONDENTS.**

To establish that each of the Respondents is in civil contempt of court, the burden is on Plaintiff to prove each of the following elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's 'favor'; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

<u>Ashcraft v. Conoco, Inc.</u>, 218 F.3d 288, 301 (4th Cir. 2000). The only element that Plaintiff can prove is the second. The Writ of Execution upon which Plaintiff relies is in Plaintiff's favor. While Plaintiff appears to have obtained a valid and proper Writ of Execution against Carolina Internet, there is no valid decree with respect to the non-party Respondents. Furthermore,

Plaintiff lacks evidence to support the other two elements and its assertion of its Motion is contrary to applicable law.

Under Fourth Circuit law, civil contempt is only appropriate when the movant can point to "an order of this Court which sets forth in specific detail an unequivocal command which a party has violated." In re General Motors Corp., 61 F.3d 256, 258 (4th Cir. 1995) (partially quoting Ferrell v. Pierce, 785 F.2d 1372, 1378 (7th Cir. 1986)). This means that the order at issue must have clearly and unambiguously directed the alleged contemnor to do or not do something which the alleged contemnor then did or did not do. General Motors, 61 F.3d at 258 ("Civil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous.") (quoting Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991)). Plaintiff must prove each of the elements by clear and convincing evidence. General Motors, supra.

In support of its Motion, Plaintiff relies upon a Writ of Execution issued by this Court against Carolina Internet, Ltd.. See text at bottom of page 1 of Motion (Dkt. No. 21), text in paragraph (1) at bottom of page 2 of Brief (Dkt. No. 22), and ¶3 of Yates Affidavit (Dkt. No. 22-4). Plaintiff did not attach a copy of the Writ of Execution to its Motion or Brief, presumably because it plainly shows that the Writ was issued against Defendant and not Respondents and Plaintiff would rather not highlight that fact. There is no mention of the Respondents anywhere on the Writ of Execution.

Respondents could not have been in contempt of the Writ of Execution because it did not require Respondents to do or not do anything.

## II. PLAINTIFF'S COLLECTION EFFORTS AGAINST RESPONDENTS HAVE NOT COMPLIED WITH APPLICABLE NORTH CAROLINA LAW.

Under Rule 69 of the Federal Rules of Civil Procedure, "[t]he procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the

procedure of the state where the court is located." See also U.S. ex rel. Superior Dupply Assocs, Inc. v. Harkins Builders, Inc., 45 F.3d 830, 833 (4th Cir. 1995) (holding that state law applies to execution and garnishment proceedings). Therefore, North Carolina state law governs the proper practice and procedure for executing upon the default judgment entered by the federal court in Colorado.

Respondents have provided in the Fact Section above, the text of Sections 1-324.4, 1-360, 1-360.1, and 1-362 which are the applicable provisions of the North Carolina General Statutes setting forth the sole methods for bringing non-parties before the Court if the Plaintiff seeks to collect a judgment from an alleged debtor of the judgment debtor. Those statutes do not require Plaintiff to take action against the Respondents to collect any debts they owe to Defendant. However, if Plaintiff chooses to collect against the Respondents to satisfy the judgment against the Defendant, Plaintiff must follow those statutes' provisions requiring supplemental proceedings during which the Respondents would have an opportunity to be heard. The Plaintiff cannot simply make up its own process and attempt to use the Writ of Execution issued against the Defendant to execute against the Respondents' property even if they owe debts to the Defendant. Under North Carolina law, the Plaintiff must go further and undertake the supplemental proceedings provided for in Sections 1-324.4, 1-360, 1-360.1, and 1-362.

Under Section 1-324.4, if the Plaintiff or the U.S. Marshal could not find property of the Defendant to execute against, the Plaintiff could elect to satisfy the execution out of debts owed to Defendant. Defendant was required to provide to the U.S. Marshal evidence of any such debt owed by Respondents. Delivery of such evidence with a transfer to the U.S. Marshal in writing, "for the use of the creditor [Plaintiff] and notice to the debtor" is a valid assignment of the debt. If all of that was done with respect to any debt owed by Data Conversions to Plaintiff, then

Plaintiff would be entitled to sue for and collect the money owed. Plaintiff failed to follow this process.

Alternatively, under Section 1-360, Plaintiff could file an affidavit with the Court that Data Conversions has property of the Defendant and move the Court to order Data Conversions to appear in court to answer concerning such property. Section 1-360 requires notice to the debtor of the judgment debtor and an opportunity to be heard before a court can order the debtor of the judgment debtor to forfeit property allegedly owed to the judgment debtor. Plaintiff failed to follow this process, too.

Under Section 1-360.1, if Data Conversions acknowledged at a Section 1-360 hearing that it is indebted to Defendant in a certain amount, the Clerk could issue an execution against such debt. Section 1-360.1 makes clear that a hearing is a prerequisite for an execution against property in the hands of a debtor of a judgment debtor. See N.C. Gen. Stat. § 1-360.1 ("After . . . a proceeding conducted pursuant to G.S. 1-360 . . . , an execution shall issue against the property or debt of the judgment debgtor that the debtor of the judgment debtor acknowledged he holds." (underline added)). Under Section 1-362, if Data Conversions held property belonging to the Defendant, then the court could order such property to be applied towards the satisfaction of the default judgment Plaintiff has against the Defendant.

The reasons for these procedures are obvious. The alleged debtor must be provided its due process rights before being compelled to pay an alleged debt. Otherwise, seizures by the U.S. Marshal Servide of Data Conversions's property may violate the Fourth Amendment of the United States Constitution prohibiting seizures of property without due process of law. Moreover, the alleged debtor must have some legal process by which a payment to the judgment creditor is credited against or erases the alleged debtor's debt to the judgment debtor. If the

9
NPGBO1:1451679.1
Case 3:11-mc-00064-GCM   Document 24   Filed 10/07/11   Page 9 of 16

alleged debtor paid money directly to the judgment creditor without such protections, the judgment debtor and other creditors of the judgment debtor could serially seek the same payments from the alleged debtor.

The Plaintiff did not act in accordance with any of the provisions of Sections 1-324.4, 1-360, 1-360.1, and 1-362.  Instead of using the procedures provided for in those statutes, Plaintiff attempted to misuse the Writ of Execution by preparing a Form USM-285 and a letter directing the U.S. Marshals Service to not only serve the Writ on Data Conversions but also to seize money belonging to Data Conversions in the amount of any debts owed by Data Conversions to Defendant.  (Dkt. Nos. 11-2 and 12-1) Plaintiff had no legal authority to direct the U.S. Marshal to undertake such action because Plaintiff had not first followed the procedures mandated by the applicable North Carolina General Statutes.  Had the U.S. Marshal made such seizures, as it attempted to do pursuant to Plaintiff's instructions, such seizures would have been in violation of North Carolina law and the Fourth Amendment of the United States Constitution..

Plaintiff is well aware that it failed to follow the proper procedures to try to collect against Data Conversions.  On September 2, 2011, Plaintiff filed a brief in this case (Dkt. No. 12) in which it provided its "Legal Analysis" regarding the procedure to follow when a judgment creditor wants to have seized property held by a debtor to a judgment debtor to satisfy all or part of the judgment.  The Plaintiff noted the paucity of cases on point before relying on and quoting extensively from Cornelius v. Albertson, 93 S.E.2d 265, 267-68 (N.C.1956).  The Plaintiff quoted twice, once in boldface, the Cornelius court's statement that:

> . . . it is manifest that a supplemental proceeding agains a third person is designed to reach and apply to the satisfaction of the judgment property of the judgment debtor in the hands of the third person at the time of the issuance and service of the order for the examination of the third person, which could not be reached by an execution at law.

Id.  Of importance here are the last few words – "which could not be reached by an execution at law."  The Cornelius court holding makes clear that, under Sections 1-360 and 1-362, supplemental proceedings were required before the Plaintiff could seize any property belonging to the non-party Respondents and that Plaintiff could not use the Writ of Execution, which was directed at Defendant, to seize property from a third party without such supplemental proceedings.[2]

Plaintiff's actions in attempting to misuse the U.S. Marshals Service to unlawfully seize property belonging to Respondents and in asserting its Motion and Brief appear to show that Plaintiff contends that it can use the Writ of Execution directed solely at Defendant Carolina Internet to seize property belonging to non-parties without conducting supplemental proceedings. Respondents are not aware of any legal authority supporting Plaintiff's actions or filings and such actions and filings fly in the face of the North Carolina law cited herein and by Plaintiff in its prior filings in this lawsuit..

**III.  PLAINTIFF CANNOT SHOW A LOSS FROM RESPONDENTS' ACTIONS.**

Even if a court of competent jurisdiction had issued a writ of execution or other lawful order directing any of the Respondents to turnover funds directly to the U.S. Marshals Service or directly to Plaintiff, which no court has done or could do in the absence of appropriate supplemental proceedings, any payment by the Respondents to the U.S. Marshals Service or directly to Plaintiff in late August or early September 2011 would have had to be returned to Respondents.  Defendant filed for Chapter 11 bankruptcy on September 28, 2011.  Pursuant to 11 U.S.C. § 547, any property of the Debtor Carolina Internet, Inc. which even possibly could have

---

[2] Plaintiff even reviewed the North Carolina statutes governing executions of judgments and supplemental proceedings to accomplish such executions before it instructed the U.S. Marshal to violate North Carolina law, On August 17, 2011, Plaintiff filed a brief in this case (Dkt. No. 10) in which it made reference to supplemental proceedings under NCGS, Sections 1-352 and 1-358.

been recovered at any time after the issuance of the Writ of Execution would have constituted an avoidable preference, and would now be required to be repaid to Carolina Internet by Plaintiff. Section 547 of the United States Bankruptcy Code provides, <u>inter</u> <u>alia</u>, that a Chapter 11 Debtor may recover any transfer of the Debtor's property made to a creditor within 90 days of the Bankruptcy Petition. Therefore, even if the Plaintiff had followed proper process against Respondents in this case, which it did not, and even if such process had been completed before Carolina Internet had filed its bankruptcy petition, any funds recovered would now be repayable to the bankruptcy estate of Carolina Internet.

Therefore, Plaintiff cannot prove the fourth element required to succeed on a motion for contempt.

**IV. PLAINTIFF'S MOTION CONSTITUTES A POST-PETITION ATTEMPT TO COLLECT MONEY THAT MAY BE OWED TO CAROLINA INTERNET, AND CONSEQUENTLY CONSTITUTES A VIOLATION OF THE AUTOMATIC STAY.**

"Civil contempt seeks to compel present or future compliance with a court order, and/or compensation of the contemnor's adversary for the injuries he has suffered as a result of non-compliance." <u>In re Jessen</u>, 738 F.Supp.960, 963 (W.D.N.C.1990). Therefore, the Motion is seeking either to have Respondents turn over money pursuant to a Writ of Execution that is not directed at any of them or to pay Plaintiff the sums that it contends the Respondents should have paid pursuant to the Writ. If any of the Respondents were in violation of the Writ of Execution, which they are not, and, therefore, potentially subject to a contempt finding, the only way they could clear the contempt alleged by Plaintiff would be to pay to the U.S. Marshals Service or to Plaintiff money any of them owe to the Defendant. However, the Respondents are barred by the United States Bankruptcy Code from taking such action. Upon the filing of Carolina Internet's Bankruptcy Case on September 28, 2011, the automatic stay took effect with respect to all of Defendant's assets.

Any account payable to Carolina Internet constitutes property of Carolina Internet's bankruptcy estate. Pursuant to 11 U.S.C. § 362(a), Plaintiff may not: (1) enforce against property of the estate any judgment obtained before commencement of the bankruptcy case, see 11 U.S.C. § 362(a)(2); or (2) undertake any act to obtain property of the estate or to exercise control over property of the estate, see 11 U.S.C. § 362(a)(3).

Plaintiff may attempt to argue that the automatic stay does not protect third parties from the collection of obligations upon which they are liable to the claimant. Such an argument entirely misses the point. None of Respondents owe any amounts to Plaintiff. The only way for there to be any obligation from Respondents to Plaintiff is for Respondents to have to pay over to Plaintiff Carolina Internet's property. This is specifically prohibited by the automatic stay.

Plaintiff also may attempt to argue that the automatic stay does not prohibit civil contempt proceedings against a non-debtor. Such an argument is inapposite and would be baseless in this case. First, as set forth above, none of the Respondents have violated any valid decree issued against them. Second, this argument again misses the point that any action to purge the contempt now by paying over any amounts ultimately shown to be owed to Carolina Internet is prohibited by the automatic stay.

## CONCLUSION

For the reasons stated in this Response, the Respondents respectfully request that the Court deny Plaintiff's Emergency Motion to Show Cause and Motion for Civil Contempt.

This the 7th day of October, 2011.

/s/Gary L. Beaver
Gary L. Beaver, N.C. State Bar No. 10244
Email: gbeaver@nexsenpruet.com
Jeffrey M. Reichard, N.C. State Bar No. 38453
Email: jreichard@nexsenpruet.com

James C. Smith, N.C. State Bar No. 8510
Email: jsmith@nexsenpruet.com
NEXSEN PRUET, PLLC
701 Green Valley Road, Suite 100
Post Office Box 3463
Greensboro, North Carolina 27402
Telephone: (336) 373-1600
**Attorneys for Respondents Data Conversions, Ltd., Raymond "Scott" Coffman and Hyperpoint, LLC**

14

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Terrance Wade Welch
T. Wade Welch & Associates
2401 Fountainview Drive
Suite 700
Houston, TX 77057
713-952-4334
Fax: 713-952-4994
Email: wwelch@twwlaw.com
*Attorney for Plaintiff*

Laurie Beth Biggs
Stubbs & Perdue, P.A.
9208 Falls of Neuse Road, Suite 111
Raleigh, NC 27615
919-870-6258
Fax: 919-870-6259
Email: lbiggs@stubbsperdue.com
*Attorney for Plaintiff*

Andrew William James Tarr
Robinson, Bradshaw & Hinson, P. A.
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
704-377-8107
Fax: 704-339-3407
Email: atarr@rbh.com
*Attorney for Defendant*

Charles E. Johnson
Robinson, Bradshaw & Hinson, P.A.
101 N. Tryson St.
Suite 1900
Charlotte, NC 28246-1900
704/ 377-2536
Fax: 704/ 378-4000
Email: cejohnson@rbh.com
*Attorney for Defendant*

Christopher G Chagaris
The Chagaris Law Firm, PA
PO Box 1408
Davidson, NC 28036
704-894-9672
Email: chris.chagaris@att.net
*Attorney for Defendant*

Matthew Felton Tilley
Robinson, Bradshaw & Hinson
101 N. Tryon St.; Suite 1900
Charlotte, NC 28246
704-336-8950
Email: mtilley@rbh.com
*Attorney for Defendant*

/s/Gary L. Beaver
Gary L. Beaver
Attorney for Respondents